IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAMES C. WENZLER,

                Plaintiff,

  v.                                                                      OPINION and ORDER

U.S. COAST GUARD, OFFICER JAMES A. GIBSON,              23-cv-170-jdp
JR., and HARVEY GENE RANDALL,

                Defendants.

---

The United States Coast Guard Auxiliary consists of volunteers who support Coast Guard missions. *See* 14 U.S.C. §§ 3901–13, 4101–04 (the Auxiliary Act). Plaintiff James C. Wenzler, without counsel, alleges in an amended complaint that defendants disenrolled him from the Auxiliary based on his on social media activity and other conduct. Wenzler contends that the investigation by which defendants reached this decision was discriminatory and procedurally flawed, and he raises claims under the First Amendment, Due Process Clause, and Administrative Procedures Act (APA).

Defendants have moved to dismiss, contending that Wenzler hasn't alleged a basis for the court to exercise subject matter jurisdiction over some of his claims, and that his other claims are facially implausible. *See* Dkt. 17 and Dkt. 18. I will grant defendants' motion to dismiss in part. Wenzler states a claim for injunctive relief under the APA against defendant U.S. Coast Guard, but I will dismiss his other claims and remove the other defendants from the case.

BACKGROUND

The commandant of the U.S. Coast Guard administers the Auxiliary. 14 U.S.C. § 3901(a). The Auxiliary includes organizational elements and units that the commandant approves, including districts, regions, divisions, and flotillas. *Id.* Prospective Auxiliary members may be enrolled pursuant to applicable regulations. *Id.* § 3903(2). Auxiliary members are not considered federal employees for most purposes, although the commandant may prescribe standards for the conduct and behavior of Auxiliary members. *Id.* § 3904(a). Auxiliary members may be disenrolled pursuant to applicable regulations. *Id.* § 3905. "A member of the Auxiliary will be disenrolled on the member's request, upon ceasing to possess the qualifications for membership, for cause, or upon direction of the commandant." 33 C.F.R. § 5.19.

The commandant has promulgated an Auxiliary Manual establishing policies and procedures for all Auxiliary members. The Auxiliary Manual provides that membership "may reasonably be expected to be granted and sustained as long as an individual meets basic eligibility and sustainability for service criteria . . . [and demonstrates] commitment to and practice of the Coast Guard's core values[ of] Honor, Respect, and Devotion to Duty." Auxiliary Manual, ch. 3, § F.1. Further, the Auxiliary Manual Provides that membership "is not a constitutionally protected liberty or property interest" or an "entitlement due to the meeting of basic membership eligibility criteria." *Id.* However, "[m]embership shall be provided minimal due process protections" that the Auxiliary Manual sets forth. *Id.*

The commandant has delegated his authority to disenroll Auxiliary members to the director and chief director. *Id.* § H.5; *see also* Auxiliary Manual, ch. 1, § B.10.b.(8). Among other reasons, the director may disenroll an Auxiliary member for "cause." *Id.* § H.5.a. The Auxiliary Manual defines "cause" as any infraction set forth in chapter three, §§ F, G, and H of the

2

Manual, or any other action that, "in the Director's opinion," "has a disruptive impact that adversely affects the normal operations, administration, [or] functions. . . [of] the Auxiliary[ or] Coast Guard." *Id.* § H.5.a(4).

Appeals of disenrollment resulting from formal disciplinary action must be made in writing to the district commander within 30 days of the date of notice of disenrollment. *Id.* § J.2.e. The standard of review shall be limited to whether the prescribed disciplinary procedures were followed. *Id.*

ALLEGATIONS OF FACT

Wenzler does not allege which defendants or other individuals committed the conduct he describes, so the facts are stated mostly in the passive voice.

Wenzler was ordered to remove posts, whose content he doesn't specify, from his personal social media account. After that, a disciplinary process was instituted against him. Wenzler complained of discrimination, but the complaint wasn't forwarded to the appropriate personnel. Wenzler informed defendant Gibson, the Ninth District Director of Auxiliary, that Gibson was discriminating against him and supporting others' discrimination, but Gibson failed to cease this conduct. Other members of the Auxiliary participated in and allowed discrimination against Wenzler. Wenzler was disciplined, which included disenrollment from the Auxiliary. The discipline was imposed because Wenzler was exercising his constitutional rights. Not all the available information was reviewed before Wenzler was disciplined. The Auxiliary members who disciplined Wenzler failed to follow the procedures in the Auxiliary Manual.

Wenzler attributes this conduct to Gibson and defendant Randall, a district commodore. Wenzler identifies other Auxiliary members and contends that their "inaction and action" led to his disenrollment, but he doesn't name them as defendants in the amended complaint's caption.

## DISCUSSION

### A. Standard of review

Defendants raise a facial challenge to subject matter jurisdiction. Dkt. 18 at 5–6. Even though Wenzler cites several documents in his response, he agrees that defendants' challenge is facial. *See* Dkt. 21 at 11. Because defendants challenge subject matter jurisdiction on facial grounds, I will not consider Wenzler's evidence. *See Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) (facial challenges to subject matter jurisdiction are evaluated under the same standard used to evaluate motions to dismiss under Federal Rule of Civil Procedure 12(b)(6)). I will, however, consider the Auxiliary Manual because it's publicly available and the amended complaint incorporates it by reference.

### B. Discrimination claim

Wenzler alleges unspecified discrimination in his amended complaint, but he hasn't disputed that he's failed to state any plausible discrimination claim. Thus, I will deem any potential discrimination claim abandoned. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). In any case, Wenzler hasn't alleged the type of discrimination that he experienced, which precludes a discrimination claim. *See Freeman v. Metro. Water Reclamation Dist. of Greater Chi.*, 927 F.3d 961, 965 (7th Cir. 2019); *Clark v. L. Off. of Terrence Kennedy, Jr.*,

709 F. App'x 826, 828 (7th Cir. 2017). I will not allow Wenzler to proceed on a discrimination claim.

C. *Bivens* claims

Wenzler brings First Amendment and due process claims and seeks damages against defendants individually under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Wenzler bases his First Amendment claim on allegations that defendants started a disciplinary process because of posts he made on his own social media account, and took further retaliatory action against him based on a complaint he made during the disciplinary process. The Supreme Court has held that "there is no *Bivens* action for First Amendment retaliation," which forecloses Wenzler's First Amendment claim for damages. *See Egbert v. Boule*, 596 U.S. 482, 499 (2022). I will not allow Wenzler to proceed on this claim.

I will consider whether *Bivens* creates a damages remedy for Wenzler's due process claim. *Bivens* "authorized a damages action against federal officials for alleged violations of the Fourth Amendment." *Id.* at 486. Later, the Supreme Court authorized a damages action "for a former congressional staffer's Fifth Amendment sex-discrimination claim," and "a federal prisoner's inadequate-care claim under the Eighth Amendment." *Id.* at 490–91. The Supreme Court hasn't extended *Bivens* beyond these three contexts. *See id.* at 491; *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017).

Recognizing a cause of action under *Bivens* is "a disfavored judicial activity." *Egbert*, 596 U.S. at 491. As a general rule, courts may extend the *Bivens* remedy to a new context only if there's no "reason to think that Congress might be better equipped to create a damages remedy." *See id.* at 492. The mere potential that extending *Bivens* to a new context would be harmful or inappropriate is enough to stop the court from taking that action. *See id.* at 496.

This case involves a considerably different context than the cases in which the Supreme Court has recognized a *Bivens* remedy. The claims, underlying facts, and "category of defendants" are all distinct. *See id.* at 492; *see also Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988) (declining to extend *Bivens* to procedural due process claim against federal officials). Furthermore, pursuant to a Congressional delegation, the commandant has promulgated the Auxiliary Manual, which "establishes the detailed process for disenrollment of a Coast Guard Auxiliarist." *See Schulsinger v. Perchetti*, No. 15-5752, 2017 WL 3579207, at *4 (D.N.J. Aug. 18, 2017); *see also Egbert*, 596 U.S. at 493 ("If there are alternative remedial structures in place, that alone . . . is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action."). The Auxiliary Manual doesn't authorize damages for improper disciplinary actions, but it's immaterial "that existing remedies do not provide complete relief." *See Egbert*, 596 U.S. at 493. Congress and the executive branch are much "better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy" in this novel and carefully circumscribed context. *See id.*

The Auxiliary Act curtails the rights of auxiliaries compared to federal employees and military personnel. *See* 14 U.S.C. § 3094(a) (auxiliary members shall not be considered federal employees for most purposes); *id.* § 4103 (Auxiliary members shall be entitled only to the rights specifically set forth in the Auxiliary Act or that Congress specifically provides in other legislation). The Supreme Court has yet to extend *Bivens* to executive branch employees or military personnel. *See United States v. Stanley*, 483 U.S. 669, 684 (1987) ("We hold that no *Bivens* remedy is available for injuries that arise out of or are in the course of activity incident to service."). It's possible that Congress would question the wisdom of extending *Bivens* to Auxiliary members, who enjoy curtailed rights compared to federal employees and military

6

personnel. *Cf. Egbert*, 596 U.S. at 496 (stating that, even if there's a "potential" for harmful or inappropriate consequences, courts cannot create a *Bivens* remedy (emphasis omitted)).

In sum, there are sound reasons to think that Congress is better equipped to create a damages remedy for Auxiliary members. I will not allow Wenzler to proceed on *Bivens* claims against Gibson and Randall.

**D. 28 U.S.C. § 1331 claims**

Wenzler contends, in essence, that even if he does not have a remedy under *Bivens*, he can proceed directly under 28 U.S.C. § 1331. As relevant here, § 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution." Defendants don't address whether Wenzler can bring his constitutional claims for injunctive relief directly under § 1331; they argue that he's failed to state a procedural due process claim because he lacks a liberty or property interest in Auxiliary membership.

I'll assume, at least for purposes of this motion, that Wenzler can proceed directly under § 1331. Section 1331 "provides not only the authority to decide whether a cause of action is stated by a plaintiff's claim that he has been injured by a violation of the Constitution, but also the authority to choose among available judicial remedies in order to vindicate constitutional rights." *Bush*, 462 U.S. at 374. "Courts have long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). But bare assertions of a constitutional violation aren't enough to proceed under § 1331 on a claim for injunctive relief. *See Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231–32 (10th Cir. 2005). Wenzler must state a claim upon which relief may be granted. *See id.* at 1232. This is where Wenzler's claim under § 1331 falters.

7

I begin with Wenzler's First Amendment retaliation claim. To state a claim, Wenzler must allege that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was at least a motivating factor in defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). The First Amendment protects, among other rights, a private citizen's right to criticize public officials. *New York Times Co. v. Sullivan*, 376 U.S. 254, 273 (1964); *Foxworthy v. Buetow*, 492 F. Supp. 2d 974, 983 (S.D. Ind. 2007).

Here, Wenzler alleges that defendants disenrolled him from the Auxiliary because of posts he made on his own social media account and complaints he made during the disciplinary process. But Wenzler fails to describe the posts or complaints in the amended complaint, so I cannot plausibly infer that the First Amendment protected this speech. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Wenzler has not stated a First Amendment retaliation claim for injunctive relief.

That leaves Wenzler's due process claim which, in his response, he contends has substantive and procedural components. I will not allow Wenzler to proceed on a substantive due process claim because his allegations don't suggest that defendants have deprived him of a right "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [the right] were sacrificed." *See Khan v. Bland*, 630 F.3d 519, 535 (7th Cir. 2010).

As for a procedural claim, Wenzler must allege "a constitutionally protected liberty or property interest in order for some process to be 'due' under the Fifth Amendment." *See Adame*

8

*v. Holder*, 762 F.3d 667, 670 (7th Cir. 2014) (parentheses omitted). Property interests are created and their dimensions are defined by existing rules or understandings that stem from a source other than the Constitution, such as state law or a federal statutes. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). A liberty interest may be protected by the Due Process Clause itself, or created by other federal law or state law. *See Caldwell v. Miller*, 790 F.2d 589, 602 (7th Cir. 1986).

Wenzler's allegations fail to suggest that he had a property or liberty interest in volunteering for the Auxiliary. The Auxiliary Manual provides that membership "is not a constitutionally protected liberty or property interest" or an "entitlement due to the meeting of basic membership eligibility criteria." Auxiliary Manual, ch. 3, § F.1. Consistently, the Ninth Circuit has concluded that a plaintiff lacked "a property interest in his position as a volunteer with the Auxiliary." *Verbil v. U.S. Coast Guard*, 683 F. App'x 600, 600 (9th Cir. 2017). The Auxiliary Manual provides that membership "shall be provided [the] minimal due process protections" set forth in it. Auxiliary Manual, ch. 3, § F.1. But these minimal "limits [on] the grounds on which [] a volunteer may be discharged, . . . do[] not create a liberty or property interest" by themselves. *Cf. Auchinleck v. Town of LaGrange*, 30 F. App'x 640, 642 (7th Cir. 2002).

In essence, Wenzler contends that he has a property interest in his position as an auxiliarist because the Auxiliary Manual provides that the director may disenroll him only for cause. *See* Dkt. 21 at 21. But cause is only one of the reasons warranting disenrollment. *See* Auxiliary Manual, ch. 3, § H.5.a. Furthermore, the Auxiliary Manual broadly defines cause to include not just the infractions outlined in it, but any action that, "in the Director's opinion," has "a disruptive impact that adversely affects the [Auxiliary's] normal operations,

9

administration, [or] functions." Auxiliary Manual, ch. 3, § H.5.a.(4). The Auxiliary Manual does not suggest, for instance, that the director's "discretion is clearly limited so that [an auxiliarist] cannot be [disenrolled] unless specific conditions are met." *See Dibble v. Quinn*, 793 F.3d 803, 808 (7th Cir. 2015). By the same token, the Auxiliary Manual doesn't identify "a concrete personal interest that is protected by the 'cause' rule." *See Auchinleck*, 30 F. App'x at 642 (emphasis omitted). No plausible reading of the Auxiliary Manual supports the position that it confers a property interest in membership on Wenzler.

Wenzler doesn't appear to contend that he has a liberty interest in volunteering for the Auxiliary, and I cannot plausibly infer that he does. *Cf. Olim v. Wakinekona*, 461 U.S. 238, 251 n.12 (1983) ("[A]n expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause."); *Miller*, 790 F.2d at 602 (giving examples of protected liberty interests, none of which applies here). In sum, because Wenzler has failed to state a facially plausible First Amendment or due process claim, I will not allow him to proceed on his claims for injunctive relief under § 1331.

E.  **APA claim**

Wenzler seeks injunctive relief under the APA, contending that defendants' decision to discipline him was arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). I will analyze this claim against the Coast Guard only because "the APA applies only to federal agencies." *Brady v. Jess*, No. 18-cv-1162, 2018 WL 5251751, at *4 (E.D. Wis. Oct. 22, 2018) (citing 5 U.S.C. § 551(1)).

As a general rule, the APA "provides a right to judicial review of all final agency action for which there is no other adequate remedy in a court." *See Bennett v. Spear*, 520 U.S. 154, 175 (1997); 5 U.S.C. § 704. "'Agency action' is defined as 'the whole or a part of an agency

rule, order, license, sanction, relief or the equivalent or denial thereof, or failure to act[.]'" *Mich. v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 786 (7th Cir. 2011) (quoting 5 U.S.C. § 551(13)). "Agency action is 'final' when it marks the consummation of the agency's decisionmaking process and determines legal rights or obligations." *Id.* at 787. The APA requires the court to set aside final agency action "only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *See Highway J Citizens Grp. v. Mineta*, 349 F.3d 938, 952 (7th Cir. 2003) (quoting 5 U.S.C. § 706(2)(A)).

As relevant here, even if an action is final, APA review is unavailable if "'agency action is committed to agency discretion by law.'" *Home Builders Ass'n of Greater Chi. v. U.S. Army Corps of Eng'rs*, 335 F.3d 607, 614 (7th Cir. 2003) (quoting 5 U.S.C. § 701(a)(2)). This exception for action committed to agency discretion is quite narrow, being restricted "to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2568 (2019).

Defendants contend that neither the Auxiliary Act nor its implementing regulations and policies provide a "meaningful standard to review the agency's action." Dkt. 18 at 10. But the statutes and regulations that defendants cite, which I've laid out in the background section, generally involve the organization of the Auxiliary and the delegation of authority to the commandant to prescribe standards for membership in it. On their face, these statutes and regulations contain no language compelling the conclusion that the commandant enjoys unchecked discretion in disenrollment decisions.

Defendants note that the Auxiliary Manual has a catch-all provision authorizing the director to disenroll an auxiliarist for any action that, "*in the Director's opinion*," has "a disruptive

11

impact that adversely affects the [Auxiliary's] normal operations, administration, [or] functions." Auxiliary Manual, ch. 3, § H.5.a.(4) (emphasis added). Further, the Auxiliary Manual states that: "The Director shall take such action based upon all available information presented or after initiating further inquiry to gather additional relevant facts when, *in the Director's judgment*, it is deemed necessary." *Id.* (emphasis added). These provisions, defendants contend, further show that the director has "unconstrained discretion" "with respect to auxiliarists' disenrollment decisions." *See* Dkt. 18 at 11–12; Dkt. 24 at 8.

I agree that the catch-all provision gives the director broad discretion to disenroll an auxiliarist for actions that he deems to disrupt and adversely affect the Auxiliary's functioning. But the fact that "disenrollment for cause necessarily calls for the exercise of discretion on the part of the decision-maker" doesn't preclude the existence of a standard to evaluate the director's decision. *Cf. Berg v. Commander, Fifth Coast Guard Dist.*, 810 F. Supp. 703, 709 (E.D. Va. 1992). The catch-all provision describes the effect an action must have to qualify as cause. If the director relied on this provision to disenroll Wenzler, there is some definitional language by which to evaluate his decision. And the Auxiliary Manual contains other grounds to disenroll an auxiliarist, which defendants have yet to argue are inapplicable. Similarly, Wenzler alleges that defendants and other officials misapplied the Auxiliary Manual in disenrolling him, so it's plausible that his APA claim turns on the more than the director's application of the catch-all provision. *See Nat'l Env't Dev. Assoc.'s Clean Air Project v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014) ("[A]n agency action may be set aside as arbitrary and capricious if the agency fails to comply with its own regulations."). The other Auxiliary Manual provision that defendants cite fails to show that the director's disenrollment decision is

12

standardless; it simply provides that the director may, in his judgment, gather additional information before making a decision.

In sum, Wenzler has plausibly alleged that there's a meaningful standard by which to judge the director's exercise of discretion, and defendants haven't sought dismissal of his APA claim for any other reason. Consequently, I conclude that Wenzler states a claim for injunctive relief claim under the APA against the Coast Guard.

ORDER

IT IS ORDERED that:

1. Defendants' motion to dismiss, Dkt. 17, is GRANTED in part and DENIED in part, with the result that plaintiff may proceed on an APA claim against the Coast Guard for injunctive relief.

2. Plaintiff's other claims are DISMISSED.

3. Officer James A. Gibson, Jr. and Harvey Gene Randall are to be removed as defendants.

4. The court expects the parties to treat each other and the court with respect. Any abusive or threatening comments or conduct may result in sanctions, including entry of judgment against the offending party.

5. If plaintiff moves while this case is pending, he must inform the court of his new address. If he fails to do this and defendants or the court cannot locate him, this case may be dismissed for failure to prosecute.

Entered March 27, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge